IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | | |
|---|---|---|
| MARY BELOTTI, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 15 cv 1388 |
| | ) | |
| v. | ) | JURY DEMANDED |
| | ) | |
| WHEATON FRANCISCAN | ) | |
| HEALTHCARE – ALL SAINTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

1. Plaintiff Mary Belotti brings this action for damages and injunctive relief against Defendant Wheaton Franciscan Healthcare – All Saints, Inc. ("Wheaton") for refusing to accommodate her disability, terminating her employment on account of her disability, and terminating her employment in retaliation for asserting her legal rights, in violation of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.*, specifically Title I of the ADA, as amended, 42 U.S.C. § 12112 *et seq.*, and Title IV of the ADA, 42 U.S.C. § 12203 *et seq.*

## JURISDICTION AND VENUE

2. This Court has original jurisdiction of this matter under 28 U.S.C. § 1331, because Plaintiff's claims are brought under the ADA. 42 U.S.C. § 12101 *et seq.*

3. Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391(b). Defendant is subject to personal jurisdiction in this district, because, at all times relevant herein, a substantial part of the events giving rise to Plaintiff's claims occurred in this district. In particular, Wheaton employed Plaintiff in this judicial district, refused to accommodate her disability in this judicial district, and terminated her employment in this judicial district.

4. Plaintiff timely filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging violations of the ADA and retaliation by Wheaton. On September 9, 2015, Plaintiff received a notice of right to sue from the EEOC. This complaint is filed within 90 days of Plaintiff's receipt of the notice of right to sue.

## PARTIES

5. Plaintiff Mary Belotti resides in Kenosha, Wisconsin. She began working for Wheaton on March 4, 2013 as a Medical Imaging Support Associate II in the Radiology Support Services Department.

6. Wheaton is an acute care hospital offering inpatient, outpatient and physician services to the residents of the Greater Racine area and surrounding communities. Wheaton was Plaintiff's employer for purposes of the ADA.

## FACTUAL ALLEGATIONS

*Belotti's Job as a Medical Imaging Support Associate II:*

7. During her time working at Wheaton as a Medical Imaging Support Associate II, Belotti performed clerical duties.

8. Belotti primarily worked at the front desk of the radiology department, where she engaged in sedentary work such as greeting patients, helping patients to complete paperwork, and ordering appropriate tests.

9. At all times relevant herein, Belotti was supervised by Diane Podemski, Support Services Supervisor of Radiology.

10. Throughout her employment with Wheaton, Belotti performed her job satisfactorily and met Wheaton's legitimate performance expectations.

2

*Wheaton's General Medical Leave Policy:*

11. At all times relevant herein and through the present, Wheaton has a policy, which, *inter alia*, permits employees who have six or more months of service, and who are suffering a continuous illness or injury lasting three or more days, to apply for general medical leave and remain on such leave for a maximum of six months from the first date of disability.

12. Wheaton's policy states that if the employee's health care provider returns the employee to work with restrictions, the restrictions will be reviewed by the disability administrator and the employer's supervisor to determine if there is work available on a temporary basis that is within the employee's restrictions. Further, it states that the disability administrator or manager will notify the employee if this work is available.

*Belotti's Injury:*

13. On February 9, 2014, Belotti suffered a serious accident, during which she severely damaged her right foot, resulting in a Lisfranc dislocation with multiple fractures.

14. Belotti underwent surgery on February 10, 2014, and was not permitted to bear any weight on her foot for several months thereafter, substantially limiting her ability to stand, walk or climb stairs. As a result, Belotti was unable to work for a period of time.

15. Following her injury, Wheaton placed Belotti on a series of leaves of absence, throughout which time Belotti communicated with Podemski about the nature of her disability and her prognosis.

*Wheaton's Wellness Program:*

16. Wheaton implemented a "Human Vitality wellness program" that went into effect in January 2014.

17. Under the program, employees paid a higher health insurance plan premium starting in April 2014 unless they attended a biometrics screening and completed an online health assessment by March 1, 2014, which deadline Wheaton later extended to March 6, 2014.

18. Prior to her injury, Belotti had scheduled a biometrics screening appointment at Wheaton for February 28, 2014. Belotti was not able to attend the appointment as a result of her injury.

19. On or about March 13, 2014, Belotti contacted Wheaton's Human Resources Department, called "HR Connect," to request an extension of Wheaton's wellness program deadline for avoiding an increased health insurance premium.

20. On March 18, 2014, Wheaton denied Belotti's request by responding in a letter that it would not grant her an exception. Wheaton stated that Belotti would see a premium increase of $50.00 per month ($25.00 per month if she was enrolled in the High Deductible plan) on her first paycheck in April 2014.

*Belotti's Unsuccessful Attempts to Return to Work at Wheaton:*

21. Dr. William Yoder provided Wheaton with a note permitting Belotti to return to work on August 1, 2014, with a few medical restrictions, including having to wear a medical boot on her right foot.

22. None of the medical restrictions imposed by Dr. Yoder affected Belotti's ability to successfully perform her job as a Medical Imaging Support Associate II.

23. Belotti contacted Podemski in mid-July 2014 to arrange for her August 1st return to work and left several voicemail messages for her.

24. On July 24, 2014, before the expiration of Wheaton's six-month medical leave policy, Podemski returned Belotti's telephone messages and told her that Wheaton had filled her former position the day before.

25. Upon information and belief, the person whom Wheaton hired to replace Belotti in the Medical Imaging Support Associate II position did not actually begin working in that job until months later.

26. By letter dated July 25, 2014, Wheaton informed Belotti that she was expected to return to work on her "first scheduled workday following 07/31/2014," which would have been August 1, 2014, the day Dr. Yoder released Belotti to return to work.

27. Nevertheless, Wheaton and Podemski denied Belotti the opportunity to return to work on August 1, 2014 in her former position as a Medical Imaging Support Associate II, because she was temporarily limited in her ability to walk.

28. Walking is not an essential function of the Medical Imaging Support Associate II job.

29. To the extent that the Medical Imaging Support Associate II job required any walking at all, it was minimal and Wheaton could have easily accommodated Belotti's disability.

30. Throughout August 2014, Belotti repeatedly contacted Wheaton's HR Connect for further information about her options for continued employment with Wheaton.

31. On August 19, 2014, LaTasha Coleman, HR Service Center Representative, informed Belotti that she would be placing Belotti on a "thirty-day job search," but stated that she first needed to connect Belotti with a recruiter.

32. The following day, on August 20, 2014, when Belotti asked Coleman why Wheaton would not place her in another available position, Coleman responded with something to the effect of "we don't do that."

33. On August 29, 2014, Belotti received a letter from Wheaton dated August 21, 2014, informing her that if Wheaton does not offer her a new position within thirty days, it will terminate her employment.

5

34. As of August 29, 2014, Belotti had not yet been contacted by Wheaton's recruiter, and Belotti's requests for an explanation as to why her former position had been filled had gone unanswered.

35. In early September 2014, Belotti expressed to both Coleman and Podemski that she had researched her rights on the EEOC website and felt that Wheaton had mishandled her employment under the ADA. Among other things, Belotti communicated to Coleman and Podemski that Wheaton had failed to engage in an interactive process as required by the ADA to discuss possible accommodations for her and that Wheaton also should have placed her in a vacant position without the need to apply for one.

36. In response, and among other things, Coleman told Belotti that Wheaton does not place employees who have work restrictions into other available positions.

37. On September 24, 2014, Sarah Wolak, a recruiter for Wheaton, contacted Belotti for the first time. She left Belotti a voicemail message, asking Belotti whether she had any questions, but providing no information on available positions at Wheaton.

38. The next day, Coleman told Belotti by e-mail that she should apply for positions posted on Wheaton's website and contact Wolak afterward to determine whether the positions "align with" her medical restrictions.

39. Belotti applied online for other positions within Wheaton but received no responses.

40. Wheaton never extended its six month medical leave policy to permit Belotti to either return to her former position as a Medical Imaging Support Associate II or to be placed in another available position for which she was qualified.

41. During the "thirty-day job search" period or at any time thereafter, Wheaton failed to place Belotti in a vacant position for which she was qualified, with or without a reasonable accommodation.

42. Wheaton never engaged in a good faith interactive process with Belotti to attempt to reasonably accommodate her disability.

43. On October 2, 2014, Wheaton terminated Belotti's employment.

44. As a result of Wheaton's failure to accommodate Belotti's disability and as a result of her unlawful termination, Belotti has lost wages, health insurance and other fringe benefits, and has incurred significant out-of-pocket expenses.

45. As a result of Wheaton's illegal discrimination in violation of the ADA, Belotti has also suffered emotional distress, pain, degradation and humiliation.

## COUNT I

### Failure to Provide Reasonable Accommodations

46. Plaintiff incorporates all prior allegations as if fully stated herein.

47. At all relevant times herein, Belotti was disabled within the meaning of the ADA.

48. Wheaton refused to reasonably accommodate Belotti's disability by extending her deadline to participate in Wheaton's wellness program and avoid an increased health insurance premium.

49. Wheaton refused to reasonably accommodate Belotti's disability when it denied her the opportunity to return to her position as a Medical Imaging Support Associate II, because of medical restrictions placed on her walking.

50. Wheaton also refused to reasonably accommodate Belotti's disability by failing to extend its medical leave policy beyond a six-month period from the date of disability in order to permit

Belotti to return to her former position or be placed in another available position, with or without reasonable accommodation.

51. Wheaton further failed to reasonably accommodate Belotti's disability by failing to reassign her to a vacant position for which she was qualified during the "thirty-day job search" period.

52. Wheaton's repeated refusals to provide Belotti with reasonable accommodations were done with malice or with reckless indifference to Plaintiff's federally protected rights.

### Prayer for Relief

WHEREFORE, Plaintiff asks the Court to enter judgment on Count I of the Complaint and award her appropriate relief as follows:

A. A permanent injunction preventing Defendant from engaging in employment practices that discriminate against employees on the basis of disability;

B. A declaratory judgment holding unlawful Defendant's refusal to extend the deadline for Plaintiff to participate in Defendant's wellness program;

C. A declaratory judgment holding unlawful Defendant's refusal to allow Plaintiff to return to her position as a Medical Imaging Support Associate II position, with or without reasonable accommodation;

D. A declaratory judgment holding unlawful Defendant's refusal to extend its medical leave policy or practice beyond six months from the date of disability;

E. A declaratory judgment holding unlawful Defendant's policy or practice of refusing to appoint disabled employees to vacant positions for which they are qualified;

F. An order reinstating Plaintiff's employment;

G. An order requiring Defendant to compensate Plaintiff for her lost wages, lost employment benefits, and other out-of-pocket costs;

H. An order requiring Defendant to compensate Plaintiff for her pecuniary and non-pecuniary compensatory damages;

I. An order requiring Defendant to pay Plaintiff punitive damages for its violations of the ADA;

J. An award of pre-judgment and post-judgment interest on all monetary amounts awarded in this action, as provided by law;

K. An award of attorneys' fees, costs, and expenses; and

L. An award for any other and further relief that the Court deems equitable, just and proper.

## COUNT II

### Termination Because of Disability

53. Plaintiff incorporates all prior allegations as if fully stated herein.

54. Wheaton terminated Belotti's employment because of her disability in violation of the ADA.

55. Wheaton's termination of Belotti because of her disability was done with malice or with reckless indifference to Plaintiff's federally protected rights.

### Prayer for Relief

WHEREFORE, Plaintiff asks the Court to enter judgment on Count II of the Complaint and award her appropriate relief as follows:

A. A permanent injunction preventing Defendant from engaging in employment practices that discriminate against employees on the basis of disability;

B. A declaratory judgment holding that Defendant violated the ADA by terminating Plaintiff's employment because of her disability;

C. An order reinstating Plaintiff's employment;

D. An order requiring Defendant to compensate Plaintiff for her lost wages, lost employment benefits, and other out-of-pocket costs;

E. An order requiring Defendant to compensate Plaintiff for her pecuniary and non-pecuniary compensatory damages;

F. An order requiring Defendant to pay Plaintiff punitive damages for its violations of the ADA;

G. An award of pre-judgment and post-judgment interest on all monetary amounts awarded in this action, as provided by law;

H. An award of attorneys' fees, costs, and expenses; and

I. An award for any other and further relief that the Court deems equitable, just and proper.

## COUNT III

### Termination in Retaliation for Plaintiff's Assertion of Her Legal Rights

56. Plaintiff incorporates all prior allegations as if fully stated herein.

57. Belotti asserted her rights under the ADA by, among other things, informing Wheaton that she believed Wheaton had violated her rights under the ADA and was discriminating against her.

58. As a result, Wheaton terminated Belotti's employment in retaliation for her asserting her rights under the ADA.

59. Wheaton's retaliatory termination of Belotti's employment was done with malice or with reckless indifference to Plaintiff's federally protected rights.

**Prayer for Relief**

WHEREFORE, Plaintiff asks the Court to enter judgment on Count III of the Complaint and award her appropriate relief as follows:

A. A permanent injunction preventing Defendant from engaging in employment practices that discriminate against employees on the basis of their asserting their federally protected rights;

B. A declaratory judgment holding that Defendant violated the ADA by terminating Plaintiff's employment in retaliation for her asserting her federally protected rights;

C. An order reinstating Plaintiff's employment;

D. An order requiring Defendant to compensate Plaintiff for her lost wages, lost employment benefits, and other out-of-pocket costs;

E. An order requiring Defendant to compensate Plaintiff for her pecuniary and non-pecuniary compensatory damages;

F. An order requiring Defendant to pay Plaintiff punitive damages for its violations of the ADA;

G. An award of pre-judgment and post-judgment interest on all monetary amounts awarded in this action, as provided by law;

H. An award of attorneys' fees, costs, and expenses; and

I. An award for any other and further relief that the Court deems equitable, just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable in the matter.

Dated: November 23, 2015                                            Respectfully Submitted,

/s/ José J. Behar
One of Plaintiff's Attorneys

John K. Hughes
José J. Behar
Kate E. Schwartz[1]
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
70 W. Madison Street, Suite 4000
Chicago, IL 60602
312-580-0100
jhughes@hsplegal.com
jbehar@hsplegal.com
kschwartz@hsplegal.com

---

[1] Kate Schwartz's application for admission to practice in this Court is currently pending.

12